## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 08-22031-CIV-MORENO/TORRES

JENNIFER LARSEN,

        Plaintiff,

vs.

KERZNER INTERNATIONAL LIMITED,
a Bahamian company, ISLAND HOTEL
COMPANY LIMITED, a Bahamian company,
PARADISE ISLAND LIMITED, a Bahamian
company, and KERZNER INTERNATIONAL
RESORTS, INC., a Florida corporation,

        Defendants.

_____/

## REPORT AND RECOMMENDATION ON DEFENDANTS'
## MOTION TO DISMISS SECOND AMENDED COMPLAINT

This matter came before the Court upon Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint.[1] [D.E. 8].[2]  After considering the Motion, Plaintiff's Response [D.E. 16] and Defendants' Reply thereto [D.E. 26], we recommend that Defendants' motion to dismiss to DENIED for the reasons set forth herein.

### I.  BACKGROUND

This matter was initiated when Plaintiff, Jennifer Larsen, filed a complaint against Defendants Kerzner International Limited, Kerzner International Bahamas

---

[1]     While Plaintiff's complaint is labeled "Second Amended Complaint," it is actually Plaintiff's first and only "Amended Complaint."

[2]     The Honorable Federico A. Moreno referred this case to the undersigned Magistrate Judge for all pretrial matters.  [D.E. 29].

Limited, Island Hotel Company Limited, Paradise Island Limited and Kerzner International Resorts, Inc. (collectively, the "Kerzner Defendants") seeking damages relating to an alleged assault that occurred at the Atlantis Hotel & Casino ("the Atlantis"), a resort located on Paradise Island in the Bahamas that is owned and operated by Defendant Kerzner International Limited and its subsidiaries. [D.E. 5]. Plaintiff is a citizen of Oklahoma. [*Id*.]. The Kerzner Defendants are all Bahamian entities, except Kerzner International Resorts, Inc., which is a Florida corporation. [*Id*.].

In September of 2006, Plaintiff's father, Gerald Larsen, booked a family vacation to the Atlantis through a 1-800 call center. [D.E. 8-3, Mir Majeed Aff. ¶ 6]. According to the Kerzner Defendants, once a trip is booked through the 1-800 call number, "the general practice and custom would be for the reservation agent to thereafter e-mail the confirmation/invoice package . . . which contains the document Important Information About Your Vacation, to the provided e-mail address." [*Id*. ¶ 6]. The document contains a paragraph entitled "ATLANTIS REGISTRATION" informing guests that upon arrival at the Atlantis, "you will be asked to sign a form agreeing to" a forum selection clause. [*Id*. ¶ 6].

Mr. Larsen cancelled the first trip days after he booked it but repurchased a second trip to the Atlantis later in that month. [*Id*. ¶¶ 7-8]. According to the Kerzner Defendants, when Mr. Larsen booked the first cancelled trip, TP #178181, he included his personal email address and, in accordance with the Kerzner Defendants' general practice, received various trip details and information including forum selection clause

information under the heading "ATLANTIS REGISTRATION."  [*Id*. ¶ 6].  After the trip was cancelled, an email was sent to that same email address along with the same document containing the notice about the forum selection clause.  [*Id*. ¶ 7].

Later, when booking the second trip, Mr. Larsen used a travel agent. [*Id*. ¶ 8]. In such cases, the Kerzner Defendants' "general practice and custom would be for the reservation agent to thereafter email a confirmation/invoice package to the travel agent, which contains the document Important Information About Your Vacation, to the provided email address."  [*Id*. ¶ 8].  The document contains information for the travel agent as well as a document to forward to the client; the material for the client included the Important Information About Your Vacation document with its forum selection language.  [*Id*.].  No email address was provided in the travel agent section, but in the customer section, an address different from the previously-provided address (vagabondtravelonline@msn.com) was given.  [*Id*.].  The documents were sent to that new address.  [*Id*.].

Additionally, the Kerzner Defendants note that the "Terms and Conditions" section of the Atlantis website contains substantially similar forum selection language and has been available to Plaintiff and her family since October 2005.  [*Id*. ¶ 9].

Plaintiff asserts that she was not involved in the booking or registration process, she does not live with her parents, she never received any e-mails or other prior information explaining forum selection clause details prior to arriving at the Atlantis, and that upon arriving at the Atlantis, she was not involved in check-in and did not sign a guest registration card.  [D.E. 13-2, Larsen Aff. ¶¶ 2-15].  In fact, the family's guest registration cards, which included the forum selection clause, were signed by

Plaintiff's father and sister. [D.E. 8-2]. Thus, Plaintiff never signed a forum selection clause document providing for claims to be initiated in the Bahamas. [D.E. 13-2, Larsen Aff. ¶ 13; D.E. 14-2 at 31-32].

Plaintiff and her family arrived at the Atlantis in January of 2007. Plaintiff alleges that on January 6, 2007 (day six of the trip), she was assaulted by an unidentified man on the Atlantis property and sustained injuries requiring medical attention.[3] [D.E. 5 ¶ 41; D.E. 13-2, Larsen Aff. ¶¶ 16-18]. The family was scheduled to leave the following day but delayed departure by one day due to her injuries and the attack. [D.E. 13-2, Larsen Aff. ¶¶ 20-21].

In her Complaint, Plaintiff alleges six counts against the Kerzner Defendants, each individually for negligent security and a sixth claim collectively against the Kerzner Defendants for willful, wanton and reckless behavior. [D.E. 5]. Specifically, Plaintiff alleges the Kerzner Defendants were negligent in failing to take reasonable steps to eliminate illegal, criminal and dangerous activities from occurring on the premises and failing to provide adequate security to its invitees. [*Id.*]. Moreover, Plaintiff alleges the Kerzner Defendants acted with willful, wanton and reckless disregard for the safety of Plaintiff as well as other patrons because the Kerzner Defendants had notice of numerous safety and security related problems in the area of Plaintiff's alleged assault but failed to take necessary steps and precautions to correct the situation. [*Id.*].

---

[3]     According to the Defendants, the alleged assailant is Dinsdale Wilson who worked for Andosian Cleaning Company, a company contracted by Defendants to perform cleaning services. [D.E. 14-2 at 11-12].

Kerzner Defendants seek to dismiss this case on two grounds.  First, Defendants argue that Plaintiff's sister, with apparent authority, signed the guest registration card on behalf of the Plaintiff and, therefore, a valid and enforceable forum selection clause exists designating proper venue in the Bahamas.   Second, apart from that alleged designated venue, Defendants argue that the case should be dismissed in favor of the Bahamas based upon traditional application of the doctrine of *forum non conveniens*.

Plaintiff contends that the forum selection clause does not apply here because she never signed the guest registration clause and had no prior knowledge of the forum selection clause.  Thus, she claims, the clause is unenforceable against her.  Plaintiff also argues that the Southern District of Florida is the most appropriate, convenient and fair forum in which to litigate this matter.  She urges the Court to deny Defendants' motion to dismiss on both grounds.

## II.  *ANALYSIS*

### A.  *Forum Selection Clause*

In the Eleventh Circuit, a motion to dismiss on the basis of a forum selection clause is  brought pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure as a motion to dismiss for improper venue.  *Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285, 1290 (11th Cir. 1998).  Federal courts have long recognized that mandatory forum selection clauses are presumptively valid and enforceable and warrant dismissal in favor of a contractually-mandated foreign forum.  *M/S Bremen v. Zapata Off-shore Co.*, 407 U.S. 1, 10 (1972).  Determining the reasonableness of a forum selection clause is a fact-specific inquiry to be made on a case-by-case basis.  *Sun Trust Bank v. Sun Int'l . Hotels Ltd.*, 184 F. Supp. 2d 1246, 1258 (S.D. Fla. 2001); *Son*

*v. Kerzner Int'l Resorts, Inc.*, No. 07-61171-CIV, 2008 WL 4186979, at * 3 (S.D. Fla. Sept. 5, 2008).  A *forum non conveniens* determination is committed to the sound discretion of the trial court. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257 (1981).

Because the Court is sitting in diversity, Florida substantive law applies. *See, e.g., Admiral Ins. Co. v. Feit Mgmt. Co.*, 321 F.3d 1326, 1328 (11th Cir. 2003) ("Sitting in diversity, we apply the substantive law of the forum state unless federal constitutional or statutory law compels a contrary result.").

Federal courts use an established test to determine whether an otherwise valid forum selection clause should be found unreasonable and not enforced.  A forum selection clause will be held "unreasonable" in only four circumstances: (1) when the formation of the clause was induced by fraud or overreaching; (2) when the plaintiff would be deprived of her day in court because of inconvenience or unfairness; (3) when the chosen law would deprive the plaintiff of a remedy; or (4) when enforcement of the provisions would contravene public policy. *Lipcon*, 148 F. 3d at 1292; *see also Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 594-95 (1991).

Notwithstanding this test, we find it unnecessary to engage in this analysis in light of a few undisputed facts in the case.  Plaintiff did not sign a guest registration card, or any other document, containing the forum selection clause.  [D.E. 13-2 ¶¶ 11-13; D.E. 14-2 ¶¶ 31-32].  Moreover, Plaintiff, an adult at the time of the trip, did not receive prior notice of the forum selection clause and was not advised about the clause during the check-in process.  [D.E. 13-2 ¶¶ 9-15].

The Kerzner Defendants argue nonetheless that Plaintiff is bound to this clause by virtue of her sister executing the guest registration card with apparent authority

to sign on Plaintiff's behalf.  They point to the registration card itself which contains a forum selection clause as well as language purporting to give the person who signs the registration card "authority to sign this document on behalf of myself and my family and/or any other persons who accompany me. . . ."  [D.E. 26 at 4].

Defendants cite the *Son* case in support of their apparent authority argument. We find that case easily distinguishable and it fails to persuade us that apparent authority exists on this record.  First, the plaintiffs in *Son* had visited the Atlantis resort a few years earlier and the judge concluded it was not unreasonable for them, having signed a forum selection provision on their previous visit, to expect they would be asked to sign a similar provision upon their return visit.  2008 WL 4186979, at *4. Morever, the plaintiffs conceded that Mrs. Son received two emails from the defendants containing a forum selection clause and other relevant information shortly after the trip was booked.  *Id.* at *5.  Mr. Son chose not to open and read the emails (both of which had "Travel Plan" on the subject lines), but the court determined that they nevertheless provided sufficient prior notice of the forum selection clause.  *Id.* Finally, the court noted that the husband had signed the forum selection clause on behalf of his wife who "admitted that she granted her husband authority to complete all procedures necessary to check-in to the Atlantis resort."  *Id.*  The court ruled that the husband had either "implied authority" to sign the forum selection clause on his wife's behalf because it was necessary to sign the clause to complete check-in, or "apparent authority" because, given language in the registration form stating the person who signed authority to bind everyone in his party, the Atlantis reasonably believed the husband's representations that he had authority to bind his wife.

Accordingly, the court found the clause valid and enforceable against the plaintiffs. *Id.*

In contrast, our case involves an adult who resides in Oklahoma while her parents live in Colorado. Even if the Kerzner Defendants sent e-mails and regular mail to Plaintiff's parents, neither Defendants nor her parents provided Plaintiff with any advance notice regarding the reservations in general or the forum selection clause in particular. Upon arrival at the Atlantis, Plaintiff did not receive notice of the forum selection clause, she did not sign any document alluding to one, and she was not involved in the guest registration check-in process. [D.E. 13-2, Larsen Aff. ¶¶ 9-15].

The Kerzner Defendants cite *H.S.A., Inc. v. Harris-In-Hollywood, Inc.*, 285 So.2d 690 (Fla. 4th DCA 1973), for the proposition that Plaintiff's family members had apparent authority to execute the guest registration cards on behalf of everyone in their party. That case states the general rule for apparent authority which requires a representation by the principal; reliance on that representation by a third party; and a change of position by the third person in reliance on the representation. *Id.* at 693. Under the circumstances of this case, we are unwilling to find that Plaintiff held her sister out as her agent for purposes of waiving her right to trial in the United States. We do not believe that Plaintiff's sister's signature on Plaintiff's guest registration card, something Plaintiff never saw, bound her to all the terms contained therein.

Evan *assuming arguendo* that Plaintiff did learn about the forum selection clause upon arriving at the Atlantis, the Kerzner Defendants' failure to give prior notice militates against finding the clause reasonable and enforceable. "A forum-selection clause is not fundamentally fair if it is shown that the resisting party was not

free to reject it with impunity." *Sun Trust Bank*, 184 F. Supp. 2d at 1261.  In *Sun Trust Bank*, the plaintiff learned about the forum selection clause for the first time while checking in at the Atlantis Hotel after flying to the Bahamas with her two children.  *Id*.  The manner in which the clause was presented to hotel guests at check-in – the guest was told to read and sign, not to read and then decide if she wanted to sign – made it objectively appear to be a required part of the registration process.  *Id*.  The court determined that, under the circumstances, the plaintiff was not afforded a meaningful opportunity to consider and reject the forum selection clause, rendering it fundamentally unfair and, therefore, unenforceable.   *Id*. at 1261-62 (extrinsic circumstances indicating a party's ability to become meaningfully informed and to reject contractual terms are equally important in determining the enforceability of a forum selection clause).  We agree with this rationale and find that even if Plaintiff had learned of the forum selection clause upon her arrival at the Atlantis hotel, she would not have had an adequate opportunity to consider and reject it, had she elected to do so.  In Defendants' own words, Plaintiff would have been "blindsided upon arrival." [D.E. 26 at 3].

     In summary, Plaintiff convincingly argues that she never received, read, or acknowledged the forum selection clause at any time prior to or during her stay at the Atlantis.  While the Kerzner Defendants contend they conveyed this information to her family and it was made available on Defendants' website, the only way Plaintiff would have known about the clause is if she had actively sought it out.  Because we find that Plaintiff had no prior notice of the forum selection clause and her sister did not have (by virtue of signing Plaintiff's guest registration card) authority to bind Plaintiff to

the terms of that forum selection clause, we conclude the clause is unenforceable against Plaintiff. We therefore recommend that Defendants' motion to dismiss on a forum selection ground be denied.

### B. *Forum Non Conveniens*

The Kerzner Defendants also seek dismissal on *forum non conveniens* grounds. The doctrine of *forum non conveniens* permits a court to decline to exercise jurisdiction when it appears that the convenience of the parties and the interests of justice weigh in favor of trying the action in an alternative forum. *See generally Piper Aircraft,* 454 U.S. 235.

In deciding whether to dismiss a case on *forum non conveniens* grounds, courts must examine (1) the availability of an alternative and adequate forum; (2) the appropriate deference to be given to the plaintiff's choice of forum; (3) the private interest factors; and (4) the public interest factors. *Id.* at 257-61. A court must consider all relevant factors of private interest, weighing in the balance a strong presumption against disturbing the plaintiff's initial choice of forum. *C.A. La Seguridad v. Transytur Line,* 707 F.2d 1304, 1307 (11th Cir. 1983). If the court finds this balance of private interests to be in equipoise or near equipoise, it must then determine whether or not factors of public interest tip the balance in favor of a trial in a foreign forum. *Id.* Although "private factors are generally considered more important" than public ones, courts should consider both public and private factors "in all cases." *See Leon v. Millon Air, Inc.,* 251 F.3d 1305, 1311 (11th Cir. 2001). The defendant must present "positive evidence of unusually extreme circumstances" and should thoroughly convince the court "that material injustice is manifest" before the

court will deny a U.S. citizen access to courts in our country.  *SME Racks, Inc. v. Sistemas Mecanicos Para Electronica, S.A.,* 382 F.3d 1097, 1101 (11th Cir. 2004).

Motions to dismiss based on choice-of-forum clauses are properly brought pursuant to Rule 12(b)(3) as motions to dismiss for improper venue.  *See Lipcon,* 148 F.3d at 1290.  For defenses raised under Rule 12(b)(3), courts may consider matters outside the pleadings, and often must do so because without the aid of such outside materials the court would be unable to discern the actual factual basis of a party's challenge to the bare allegation in the complaint that venue is proper in that court. *See, e.g., Webster v. Royal Caribbean Cruises, Ltd.,* 124 F. Supp. 2d 1317, 1320 (S.D. Fla. 2000) (citing *Transmirra Prods. Corp. v. Fourco Glass Co.,* 246 F.2d 538, 538-39 (2nd Cir. 1957) (resolving motion to dismiss because of improper venue "in the usual manner on affidavits, here supplemented by answers to interrogatories, and a deposition from one of the defendant's employees in the district, rather than by a full trial.")).

### 1.  *Availability of Adequate Alternative Forum*

The defendant has the initial burden of establishing that an adequate alternative forum exists with jurisdiction over the entire case.  *La Seguridad*, 707 F.2d at 1307-1309.  "Ordinarily, [the adequate alternative forum] requirement will be satisfied when the defendant is 'amenable to process' in the other jurisdiction." *Piper Aircraft*, 454 U.S. at 255 n.22 (quoting *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 506-507 (1947).  Here, four of the five Kerzner Defendants are Bahamian corporations and it is undisputed that they are amenable to process in the Bahamas.  [D.E. 8-2, Pyfrom Aff. ¶¶ 3-5].  Plaintiffs concede that the Kerzner Defendants "have shown that the

Bahamas is an adequate forum." [D.E. 16 at 8].  Moreover, the Bahamian legal system is patterned after the English system; allows access to evidence, witnesses, and relevant sites; permits actions based on negligence and damages in personal injury cases; and supports enforcement of judgments.  [D.E. 8-2, Pyfrom Aff. ¶ 11]; *see also Morse v. Sun Int'l Hotels Ltd.*, No. 98-7451-CIV-JORDAN, 2001 WL 34874967, at *2 (S.D. Fla. Feb. 26, 2001) (finding that the Bahamas was an adequate alternative forum for a plaintiff suing for personal injuries sustained at the Atlantis), *aff'd* 277 F.3d 1379 (11th Cir. 2001) (table).  Accordingly, we have no reason to find other than that the Bahamas provides Plaintiff with an adequate alternative forum.  We now turn to the private and public factors to determine whether the action should be dismissed.  *Piper Aircraft*, 454 U.S. at 257.

## 2.  *Private Interest Factors*

In weighing the private interests of the case, we look at several factors, including "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Gulf Oil,* 330 U.S. at 508.  In considering these factors, we must weigh the relative advantages and disadvantages of each potential forum, and not simply consider the advantages or disadvantages of one or the other.  *La Seguridad,* 707 F.2d at 1308.

When considering the private factors, the Court must also give a strong presumption in favor of the Plaintiff's initial forum choice. As the Supreme Court

explained in *Gulf Oil,* "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." 330 U.S. at 508. The Eleventh Circuit elaborated further: "in this Circuit we have long mandated that district courts 'require positive evidence of unusually extreme circumstances, and should be thoroughly convinced that material injustice is manifest before exercising any such discretion as may exist to deny a United States citizen access to the courts of this country.'" *SME Racks,* 382 F.3d at 1101 (*quoting La Seauridad,* 707 F.2d at 1308 n. 7)).

The Kerzner Defendants first suggest that we accord Plaintiff's choice of forum – the Southern District of Florida – less-than-normal deference because she is not a resident of Florida. [D.E. 8 at 14]. They cite no controlling Eleventh Circuit authority for this proposition, and the cases they do cite indicate that a district court *may* afford a *slightly less* deferential standard than would otherwise be accorded. We do not sign on to the proposition that any lesser presumption standard applies to the analysis between a U.S. plaintiff and a foreign defendant. In such a situation, the presumption that *SME* addresses should apply to any U.S. court adjudicating the case of a U.S. plaintiff against a non-U.S. defendant seeking to dismiss the case in favor of a foreign country and a foreign court system. Much like the jurisdictional national contacts test for actions arising under federal law, *forum non conveniens* analysis should be addressed on a national level. The presumption should fully and equally apply in such a case.

Where the U.S. plaintiff who does not reside in the forum district may run into a roadblock is in the particular application of the balance of burdens, where that

plaintiff is already agreeing to "travel," if you will, to a jurisdiction where she does not reside. That is where that issue is better addressed. The choice of forum "presumption," however, exists equally from the outset. But for the sake of argument even if we applied a slightly less deferential standard here that would not change our analysis, as we address below with respect to the application of all the private interest factors.

The Kerzner Defendants allege that a great majority of the relevant witnesses reside in the Bahamas, making a trial there more convenient. Defendants have identified two sets of potential witnesses who reside in the Bahamas, those who are employed by the Kerzner Defendants or their affiliates and those who are not. The first group includes: (a) Investigator Allerdyce Smith, who assisted Plaintiff to the local police station; (b) Security Officer Jeff Adderly, who took Plaintiff's statement; (c) Nurse Smith, who assisted Plaintiff immediately after the incident; (d) Security Supervisor Fred Laster and Manager Laytoya Davis, both of whom have knowledge of the incident; (e) hotel employees who were involved in the maintenance of the area of the incident; and (f) corporate representatives and employees working for those companies that own and operate the Atlantis. [D.E. 8 at 15]. Other potential witnesses who are *not* employed by the Kerzner Defendants or their affiliates and thus are not under Defendants' control are: (a) unidentified officers of the local police department who took a statement from Plaintiff and who presented the alleged assailant in a police line in Paradise Island, the Bahamas; (b) unidentified nurses and doctors at the hospital in the Bahamas who examined and/or treated Plaintiff after the incident; (c) Dinsdale Wilson, the alleged assailant; and (d) unidentified officers and

employees of Anderson Cleaning Company, the cleaning company for the Atlantis that allegedly employed Dinsdale Wilson and which is not owned, operated, controlled, or affiliated with the Kerzner Defendants.  [*Id.* at 15-16].

The Kerzner Defendants implicitly recognize that those witnesses who are employed by them or by their affiliates are within their control and compulsory process will not be necessary to produce them in this forum.  *See, e.g., Ward*, 2005 WL 2456191, at *3.  Other than stating generally that they should not be forced to incur the costs associated with transporting individuals or evidence to the United States when Plaintiff cannot show a single nexus to Florida [D.E. 26 at 8], the Kerzner Defendants' primary focus is on the witnesses who are *not* within their control. Defendants assert the unavailability of these witnesses, particularly the alleged assailant Dinsdale Wilson, requires dismissal on *forum non conveniens* grounds.

We find, however, that the majority of the key witnesses who reside in the Bahamas are the Kerzner Defendants' or their affiliates' employees or agents.  These are the witnesses who will most likely be able to address Plaintiff's claims of negligent security at the Atlantis Hotel and willful, wanton, and reckless behavior given Defendants' prior notice of security-related problems on the Atlantis' grounds. Defendants "have not established that it would be 'unusually' inconvenient or costly to transport these witnesses. . . and such a contention would be difficult to sustain in light of Paradise Island's proximity to South Florida, and the ease and frequency of travel between the two locations."  *Id.* (internal citations omitted).  As for the other potential witnesses located in the Bahamas, such as the Paradise Island police officers and the physicians and nurses who initially treated Plaintiff, the Kerzner Defendants

have not met their burden of establishing that live testimony is necessary to their defense or that the necessary evidence could not be procured through videotaped depositions, letters rogatory, or some similar procedure.  *Id.* at *4; *Sun Trust*, 184 F. Supp. 2d at 1264.

Another important private interest factor to consider is the ability to implead potential third-party defendants.  *See Piper Aircraft*, 454 U.S. 259-60 ("The District Court correctly concluded that the problems posed by the inability to implead potential third-party defendants clearly supported holding the trial in [the alternate forum]."). The Kerzner Defendants argue this factor is important because neither they nor their affiliates owned, operated or controlled the business that employed Dinsdale Wilson, the alleged assailant.  They say that because the alleged assailant and the company that employed him (which has not been named as a Defendant in this case) are "presumably located in the Bahamas, they are unlikely to be subject to this Court's jurisdiction and, therefore, the Kerzner Defendants will not be able to implead them if this case remains in Florida."  [D.E. 26 at 10].  They claim severe prejudice if they are forced to litigate this case before a Florida jury without additional tortfeasors. [*Id.*].

Defendants analogize this case to *Son*, 2008 WL 4186979, where an individual staying at the Atlantis Hotel in the Bahamas was severely injured during a boating excursion booked through the hotel's Tour and Excursions Center.  The injured plaintiff and her husband sued the Kerzner Defendants, Nassau Cruises, Ltd. (the excursion company), and three individual defendants for negligence and loss of consortium.  *Id.* at 1.  Plaintiffs sought to show that Nassau Cruises and the individual

defendants were the agents of the Kerzner Defendants and that the Kerzner Defendants were vicariously liable for the plaintiff's injuries. *Id.* at 9. The court found that many of the "most vital witnesses needed to resolve the issue of liability" resided in the Bahamas. *Id.* at 8. Because these witnesses (some of whom were defendants) resided in the Bahamas and could not be compelled to appear in this forum because they were outside the compulsory process of the court, *and* they were the Kerzner defendants' main witnesses to challenge the plaintiffs' claims of liability, the court concluded that the Kerzner defendants "would be severely prejudiced in their ability to defend their case" if they were forced to present testimony from these witnesses by deposition or letters rogatory. *Id.* at 9.

Moreover, the *Son* court concluded that the Kerzner defendants would be unable to meaningfully join Bahamian-based Nassau Cruises and the other Bahamian defendants who were directly involved in the controversy. *Id.* They thus "would be forced to defend claims of vicarious liability with limited benefit of evidence from persons actually involved in the incident giving rise to the claim." *Id.* Ultimately, after considering all the private interest factors, the court determined they weighed substantially against the plaintiffs' chosen forum. *Id.* at 10.

But again, however, *Son* is too factually distinguishable from our case for the Kerzner defendants to persuade us to follow it. Our case does not involve vicarious liability, an important distinction as the court in *Son* noted:

> Unlike all of the cases involving injuries at resorts cited by Plaintiffs, this case is distinct because it involved an injury allegedly caused by third parties. In every other case, the plaintiff alleged that the resort was directly liability for negligence. *Here, Plaintiffs do not argue direct*

*negligence by the Kerzner Defendants, and the Kerzner Defendants can only defend their own case by compelling the attendance of the alleged direct tortfeasors.*  While these tortfeasors are nominally part of this lawsuit and have been served, their appearance in Court cannot be guaranteed.

*Id.* at 9 n.6 (emphasis supplied).

By contrast, in our case, Plaintiff is seeking to hold the Kerzner Defendants directly liable for her injuries based on theories of negligent security and willful, wanton, and reckless behavior given Defendants' prior notice of security-related problems on the Atlantis property.  There are no claims of vicarious liability here that would require impleading the alleged assailant or the company that employed him.  *See, e.g, Sun Trust*, 184 F. Supp.  2d at 1264 (explaining that courts "look to the various theories of recovery in order to determine whether the joinder of [a] potential third-party is in fact crucial to the defendant's case. . ." and contrasting the plaintiff's theory that the defendants breached their duty to provide a safe swimming environment for their invitees with the theory that the entity responsible for operating and managing the hotel's pool facilities, acting as the defendants' agent, was negligent); *see also Ward*, 2005 WL 2456191, at *3 n.4 ("Even assuming that there are third parties that need to be joined[,] the defendants have not established that it would be unduly burdensome to pursue a separate indemnification action against any such third parties in the Bahamas.").

We also consider the potential witnesses that Plaintiff has identified who reside in the United States:  witnesses to her initial trauma, her medical treatment after leaving the Bahamas, her health, employment history, and mental and emotional state.  [D.E. 16 at 15].  Plaintiff says these witnesses will make themselves available

for deposition and will come to Miami, or she will do without them.   [D.E. 16 at 15].
Given the strong deference we give to Plaintiff's choice of forum, the fact that many of
these witnesses are not located in the Bahamas is a factor that supports application
of the presumption.   And when they are balanced against those witnesses who are
found only in the Bahamas, that tilts against dismissal of this case in favor of the
Bahamas.

As for documentary evidence in this case, the Kerzner Defendants contend that
all relevant documents are located in the Bahamas.   In response, Plaintiff asserts that
the parties are already in possession of all the hotel, police, and medical records from
the Bahamas that were generated in connection with the incident.   [D.E. 16 at 15
n.21].   The Kerzner Defendants have not pointed to any documentary or other evidence
that is not already available or could not be obtained for trial in this district.   *See*
*Ward*, 2005 WL 2456191, at *4; *Doe v. Sun Int'l Hotels, Ltd.*, 20 F. Supp. 2d 1328, 1330
(S.D. Fla. 1998) (plaintiff possessed all medical and treating records as well as factual
incident reports made by Atlantis Hotel security personnel of alleged rape on hotel
property; other documentation such as security reports and employee statements were
within the defendants' control and therefore within the parties' access).   This factor
does not weigh in favor of dismissal.

Finally, the Kerzner Defendants assert that a view of the premises is critical to
a jury's review of the facts of the case.   Plaintiff counters that Defendants have failed
to demonstrate there is anything unusual about the physical layout of the site that
cannot be adequately and accurately depicted in photographs and diagrams.   We agree.
*See, e.g., Sun Trust*, 184 F. Supp. 2d at 1264; *Ward*, 2005 WL 2456191, at *4.   Because

Defendants have not met their burden of showing that a viewing of the site is materially essential to their defense of the action, and given the presumption in favor of Plaintiff's choice of forum, we find this factor does not favor dismissal.

For the foregoing reasons, whether we consider the private interest factors alone or in combination, we find that the Kerzner Defendants have not satisfied their burden of setting forth "positive evidence of unusually extreme circumstances" sufficient to overcome the strong presumption in favor of Plaintiff's choice of forum in this case. *See Ward*, 2005 WL 2456191, at *4. We are not "thoroughly convinced that material injustice is manifest" such that we would be compelled to deny Plaintiff access to the United States' courts.

### 3.   *Public Interest Factors*

When the balance of the private interest factors are in or near equipoise, the court must also consider public interest factors. These factors include: (a) court congestion and jury duty generated by controversies having no relation to the forum; (b) the desirability of having localized controversies decided at home; and (c) the difficulties attendant resolving conflict-of-laws problems and applying foreign law. *See La Seguridad,* 707 F.2d at 1307. This list is not intended to be exhaustive, but merely to suggest the range of relevant considerations. *Id.* "There is a strong federal interest in making sure that plaintiffs who are United States citizens generally get to choose an American forum for bringing suit, rather than having their case relegated to a foreign jurisdiction." *SME Racks,* 382 F.3d at 1104.

We note that the administrative difficulty and court congestion factor "has been properly accorded little or no weight in the [public interest factors] analysis." *Morse*,

2001 WL 34874967, at *6; *see also Sun Trust*, 184 F. Supp. 2d at 1266.  Further, while the application of foreign law is an important factor to be considered in weighing the public interests, this factor cannot be accorded dispositive weight as federal courts are often required to decide issues of foreign law.  *Ward*, 2005 WL 2456191, at *5 (citing *SME Racks*, 382 F.3d at 1105 n.11).  Moreover, Bahamian law is derived from English law and is similar to Florida law, and there are no language barriers to this Court's understanding of Bahamian law.  *Id.*; *see also Sun Trust*, 184 F. Supp. 2d at 1266.

It is clear that the Bahamas has an interest in the just and efficient resolution of lawsuits occurring there and against defendants incorporated there.  *Ward*, 2005 WL 2456191, at *5; *Sun Trust*, 184 F. Supp. 2d at 1266.  But this forum has a similar interest in providing United States citizens with a forum in which to seek redress for injuries caused by foreign defendants who are subject to U.S. jurisdiction.  *E.g., Ward*, 2005 WL 2456191, at *5 (citing *Sun Trust*, 184 F. Supp. 2d at 1266, and *SME Racks*, 382 F.3d at 1104).  In addition, "the United States also has an interest in litigation involving the Kerzner defendants because they have conducted business in the United States through their South Florida offices."  *Id.* (citing *SME Racks*, 382 F.3d at 1104).

We have thus weighed the relevant considerations but the Kerzner Defendants have not thoroughly convinced us that manifest injustice will result if this case proceeds to trial in this forum.  We do not find that the interests of justice and convenience of the parties weigh significantly more in favor of trying this action in the Bahamas.  We conclude that Plaintiff's choice of forum should not be disturbed and,

therefore, we recommend that Defendants' motion to dismiss on *forum non conveniens* grounds be denied.

### III.   CONCLUSION

For the foregoing reasons, the undersigned Magistrate Judge hereby **RECOMMENDS** that Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint [D.E. 8] be **DENIED** in its entirety.

Pursuant to Local Magistrate Rule 4(b), the parties have ten (10) business days from the date of this Report and Recommendation to serve and file written objections, if any, with the Honorable Federico A. Moreno, United States District Judge. Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the report and bar the parties from attacking on appeal the factual findings contained herein. *R.T.C. v. Hallmark Builders, Inc.,* 996 F.2d 1144, 1149 (11th Cir. 1993); *LoConte v. Dugger,* 847 F.2d 745 (11th Cir. 1988); *Nettles v. Wainwright,* 677 F.2d 404, 410 (5th Cir. Unit B 1982) (en banc); 28 U.S.C. § 636(b)(1).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 4th day of May, 2009.

    /s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge